UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
 DAVID WYCHE,

                    Plaintiff,                    **MEMORANDUM AND ORDER**

     - against –                                  19-CV-7202(KAM)

 KM SYSTEMS, INC. et al,

                    Defendant.
-------------------------------------X

**MATSUMOTO, United States District Judge:**

        Plaintiff David Wyche ("Plaintiff" or "Wyche"),
appearing *pro se*, brings this action against defendants, K&M
Systems, Inc. ("K&M") and Crown Castle USA Inc.("Crown
Castle")(collectively "defendants"), alleging that K&M and Crown
Castle discriminated against him due to his race and retaliated
against him after he made verbal complaints of unsafe work
conditions.  (ECF No. 1, Complaint ("Compl.") dated 12/23/2019.)
Defendants move to compel arbitration, arguing that plaintiff's
discrimination and retaliation claims are subject to mandatory
arbitration pursuant to the arbitration clause in plaintiff's
employment offer letter.  For the reasons set forth below,
defendant's motion is granted and this action is stayed pending
arbitration.

<u>**BACKGROUND**</u>

        On August 17, 2018, plaintiff electronically signed an
offer letter of employment, containing an arbitration provision,

with K&M.  (ECF No. 25-2, Exhibit A.)  Wyche was hired as an "RF
Field Test Engineer Contractor" and was assigned to work for
Crown Castle.  *Id*.  The arbitration provision, included in the
"Dispute Resolution" section of the letter, states:

> Except as otherwise agreed, any controversy or claim
> arising out of, or relating to your employment
> relationship with K&M Systems, and any agreements
> hereafter entered into between you and K&M Systems in
> connection with your employment relationship, shall be
> settled by binding arbitration in accordance with the
> then current dispute resolution rules applicable to
> employment disputes (the "Rules") of one of the
> following named national arbitration organizations:
> JAMS Endispute, the National Arbitration Forum, or the
> AAA, to the extent such rules do not conflict with any
> provision of this paragraph.  Such arbitration shall
> be held in San Diego, California, before a single
> neutral arbitrator selected in accordance with the
> Rules, and the internal laws of the State of California
> shall govern the interpretation of the terms and
> conditions of your employment and of this offer letter.
> If you initiate arbitration, you will pay the
> arbitration organization's filing fee to the extent
> that it is equal to the current filing fee in the
> appropriate court had you brought your claim there. K&M
> Systems will pay the arbitrator's fee and any costs
> directly associated with the use of arbitration that
> are imposed in connection with the proceeding, but you
> will remain responsible for the costs of your
> attorneys, discovery, expert witnesses and other costs
> you would have had to bear had the matter been filed
> in court.  Any demand for arbitration must be made
> within the applicable statute of limitations.  Any
> award, order or judgment pursuant to arbitration under
> this paragraph must be in writing, and shall be deemed
> final and binding and may be entered and enforced in
> any state or federal court of competent jurisdiction.
> Both you and K&M systems agree to submit to the
> jurisdiction of any such court for purposes of the
> enforcement of any such award, order or judgment.

*Id.* There is no evidence in the record that Wyche rejected the arbitration provision.

On December 23, 2019, Plaintiff filed this action alleging that he was discriminated against due to his race in violation of Title VII of the Civil Rights Act of 1964, the New York City Human Rights Law, and the New York State Human Rights Law. *See generally* Compl. He also alleges that the defendants retaliated against him after he had made several complaints regarding unsafe working conditions and a failure to train employees. (Compl. at 4.) Specifically, plaintiff claims that on November 5, 2018, he complained about the unsafe working conditions in an email and, shortly thereafter, was terminated. *Id.* During his employment, Plaintiff claims he was discriminated against because he is African American and contends that "comments were made about [his] African American hairstyle by Crown Castle staff." *Id.*

Defendants responded by filing the pending motion, arguing that "plaintiff agreed that he would not file a lawsuit in any court relating to any controversy or claim arising out of or relating to his employment with defendant, and would instead submit to final and binding arbitration." (ECF No. 26, Memo of Law in Support of Motion to Compel Arbitration, at 3.) Defendant asserts that plaintiff's claims are squarely within the scope of the arbitration agreement. *Id.* In opposing the motion, plaintiff

asserts that his claims are not subject to arbitration because the Federal Arbitration Act ("FAA") does not apply, and the agreement is unconscionable and unenforceable. (ECF No. 15, Plaintiff's Opposition ("Opp.") to Defendant's Motion to Compel Arbitration; ECF No. 30, Plaintiff's Rebuttal ("Rebuttal") to Defendant.)

## LEGAL STANDARD

The United States Supreme Court has noted that the Federal Arbitration Act ("FAA" or the "Act") creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Corp.*, 460 U.S. 1, 24 (1983). The FAA provides, in pertinent part, that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the FAA "requires federal courts to enforce arbitration agreements and stay any litigation that contravenes such agreements." *Fox v. Forest River, Inc.*, No. 16-cv-770, 2017 WL 2623889, at *2 (N.D.N.Y. June 16, 2017) (citing *McMahan Sec. Co. L.P. v. Forum Capital Markets L.P.*, 35 F.3d 82, 86 (2d Cir. 1994)).

The FAA reflects an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Therefore, "courts must 'rigorously enforce' arbitration agreements according to their terms[.]" *Am. Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Although federal policy favors arbitration, "a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation and internal quotation marks omitted). "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further proceedings." *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (citation and internal quotations omitted).

Consistent with these principles, a court must resolve four inquiries to determine whether an action should be sent to arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the

court concludes that some, but not all, of the claims in
the case are arbitrable, it must then decide whether to
stay the balance of the proceedings pending arbitration.

*JLM Indus, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir.
2004) (alteration in original) (citing *Oldroyd v. Elmira Sav.
Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998)).  "[A]ny doubts
concerning the scope of arbitrable issues should be resolved in
favor of arbitration[.]"  *Moses H. Cone*, 460 U.S. at 24-25.
When all of the claims in an action are referred to arbitration
and a stay is requested, the FAA mandates that a stay be ordered
while the claims are arbitrated.  *Katz v. Cellco P'ship*, 794
F.3d 341, 347 (2d Cir. 2015).

## DISCUSSION

### I.     The FAA Applies

Plaintiff contends that his employment contract is at
odds with the FAA because he "worked as a transportation worker
that engaged in interstate commerce." (Rebuttal at 5.)  First,
defendants correctly argue that, "interstate commerce is clearly
an indispensable requirement for the FAA to apply." (ECF No.
29, Defendant's Reply Memorandum of Law, at 5.)  Defendants
allege that "(a) the Agreement was entered into between a New
Jersey resident (Plaintiff) and a California corporation (K&M
Systems) which does business in multiple states, (b) Plaintiff
performed services in both New Jersey and New York and (c) the
Agreement involves or affects commerce – K&M provides consulting

6

and staffing services to its national clients and designs and installs mobile phone coverage systems throughout the United States in exchange for payment." *Id*.  For the reasons stated, the court agrees that Plaintiff's contract clearly involved performing interstate commerce and that the FAA covers contracts involving interstate commerce.

The court also agrees that plaintiff does not fall under the transportation worker exemption of the FAA.  Section 1 of Act excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  In *Circuit City Stores Inc. v. Adams*, the Supreme Court "confine[d] the exemption to transportation workers."  532 U.S. 105, 109, 121 S. Ct. 1302, 1306, 149 L. Ed. 2d 234 (2001).  Plaintiff cites to *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019), to support his contention.  However, unlike the plaintiff in *New Prime* who was hired by an interstate trucking company as a driver, Plaintiff was hired as an "RF Field Test Engineer Contractor." Plaintiff's responsibilities included "integrating wireless telecommunications equipment at wireless hubs throughout New York City."  (ECF No. 25-1, Majernik Declaration, ¶ 5.) Additionally, Wyche was terminated because he "lacked technical aptitude" to perform his duties as an RF Field Test Engineer Contractor, not because of his inabilities to perform as a

transportation worker.  *Id.*, ¶ 8.  Plaintiff himself asserts
that he performed "engineering work for Crown Castle USA Inc.
without any prior engineering experience or education."  (Opp.
at 1.)  For the reasons stated, plaintiff was not engaged as a
transportation worker, his employment contract covers his work
as an engineer contractor, and the arbitration clause applies to
his dispute with his employer as explained herein.

        Plaintiff's employment contract, hence, is governed by
the FAA, and the arbitration provision's scope may cover Title
VII claims brought by Wyche.  *See EEOC v. Waffle House*, Inc.,
534 U.S. 279, 289, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)
("Employment contracts, except for those covering workers
engaged in transportation, are covered by the FAA."); *Circuit
City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S.Ct. 1302,
149 L.Ed.2d 234 (2001) ("The Court has been quite specific in
holding that arbitration agreements can be enforced under the
FAA without contravening the policies of congressional
enactments giving employees specific protection against
discrimination prohibited by federal law.").

        Having determined that the FAA applies to the
arbitration provision in this case and that a valid arbitration
clause may encompass Title VII claims, the remaining questions
before this court are whether the parties agreed to arbitrate
the dispute pursuant to a valid contract, and whether Wyche's

8

complaint falls within the scope of the agreement. *See Teah v. Macy's Inc.*, No. 11-CV-1356 CBA MDG, 2011 WL 6838151, at 4 (E.D.N.Y. Dec. 29, 2011).

## II.   Agreement to Arbitrate

### A. At-Will Employment Contracts May Be Subject to Arbitration

Wyche contends that because his employment contract was at-will, he cannot be bound by the arbitration agreement. Specifically, plaintiff argues that K&M included unenforceable terms in the arbitration clause and that because Wyche is an at-will employee, the "arbitration stipulation [is] unconscionable." (Opp. at 2.) Wyche's contention lacks merit. The fact that Wyche's employment was terminable at will does not mean that the arbitration clause is inapplicable to the disputes arising out of his employment with defendants. *See Teah v. Macy's Inc.*, No. 11-CV-1356 CBA MDG, 2011 WL 6838151, at 4 (E.D.N.Y. Dec. 29, 2011) (plaintiff's "at will" contract does not preclude him from being bound by an agreement to arbitrate disputes that arise out of his employment or termination); *Smith v. Professional Security Bureau,* 225 F.Supp.2d 395, 398 (S.D.N.Y.2002)(upholding at-will employment agreement that also required arbitration); *Matter of Ball (SFX Broadcasting Inc.*), 236 A.D.2d 158, 665 N.Y.S.2d 444, 446-47 (3d Dep't 1997) (at-will employee bound by arbitration agreement).

## B. The Arbitration Agreement Was Not Unconscionable

Plaintiff also opposes the motion to compel arbitration because he claims the work agreement was both procedurally and substantively unconscionable.  See *generally* Opp.  "[Q]uestions of contractual validity relating to the unconscionability of [an] arbitration agreement must be resolved first, as a matter of state law, before compelling arbitration pursuant to the FAA." *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir.2003).  Under New York law[1], a contract is considered unconscionable when it is "so grossly unreasonable ... in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms."  *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988).  For a contract to be invalid, the contract must be both procedurally and substantively unconscionable.  *Teah v. Macy's Inc.*, No. 11-CV-1356 CBA MDG, 2011 WL 6838151, at 6 (E.D.N.Y. Dec. 29, 2011).

---

[1] The court relies on New York law to assess the enforceability of the agreement because defendant's brief assumes that the court will rely on New York law to resolve the issue by citing and relying on *Gillman v. Chase Manhattan Bank*, N.A., 73 N.Y.2d 1, 10, 534 N.E.2d 824, 828 (1988).  (ECF No. 29, Defendant's Memo of Law in Further Support of Its Motion to Compel Arbitration at 5.)  Plaintiff does not specifically state that New York law governs, but does cite to the standard put forth in *Gilman* as to whether the terms are "grossly unreasonable to the point that the work agreement/contract is unenforceable."  (Rebuttal at 4.)  If "[t]he parties' briefs assume that New York substantive law governs the issues ... such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.,* 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

Plaintiff argues that the contract is procedurally unconscionable because the employment contract is at odds with the FAA since Plaintiff was a "transportation worker engaged in interstate commerce." (Rebuttal at 4-5.) However, "the procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice. . . ." *State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (1983). "The focus is on . . .whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 11, 534 N.E.2d 824, 828 (1988). This contract is not procedurally unconscionable. First, plaintiff does not contest the process surrounding the formation of the arbitration clause, nor does plaintiff argue that he lacked meaningful choice when signing the contract. Wyche does not describe any "deceptive or high-pressured tactics," which were utilized to get him to sign his offer letter. In fact, K&M sent plaintiff his offer letter on August 17, 2018, which clearly gave plaintiff a choice on whether or not to accept the letter's terms: "the terms of th[e] letter, including the attached Additional Terms and Conditions, will become effective *only upon* execution by both you and K&M Systems." ECF No. 25-2, Exhibit A at 2 (emphasis added).

11

Plaintiff willingly signed the letter before his start date on August 23, 2018, thereby accepting its terms. *Id*. Second, plaintiff mischaracterizes what constitutes procedural unconscionability by contending that the FAA does not apply. As this court already determined, the FAA *does* apply because plaintiff is not a transportation worker and he did work that engaged in interstate commerce. *See supra* Discussion Part I.

Plaintiff also argues that the arbitration clause is substantively unconscionable "because working in New Jersey was not stipulated in [the] agreement. . . ." (Rebuttal at 5.) "Substantive unconscionability exists when the terms are grossly unreasonable by favoring the party seeking to enforce the contract." *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 349 (S.D.N.Y. 2019). Once again, Wyche mischaracterizes the concept of substantive unconscionability. Traveling to New Jersey, while not explicitly mentioned in his offer letter, does not make the contract provision unconscionable. In considering whether plaintiff's other claims constitute substantive unconscionability, this court reviews plaintiff's argument that because he is located in New Jersey and the arbitration would be in San Diego, "pursuing arbitration [would be] inconvenient, impractical, bias[ed], [and] expensive." (Opp. at 3-4.) However, defendants have waived the clause requiring arbitration in San Diego and will hold the proceedings in New York City,

thereby countering plaintiff's contention.  (ECF No. 26,
Defendant's Memo of Law in Support of Its Motion to Compel
Arbitration at 4.)

In light of the foregoing, parties clearly agreed to
arbitrate the dispute and the arbitration clause is not
unconscionable.

### III. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

To determine whether plaintiff's claims fall within
the scope of the arbitration provision, the court must "classify
the particular clause as either broad or narrow." *Louis Dreyfus
Negoce S.A. v. Blystad Shipping & Trading Inc*., 252 F.3d 218,
224 (2d Cir. 2001).  If an arbitration clause is narrow, "the
court must determine whether the dispute is over an issue that
is on its face within the purview of the clause, or over a
collateral issue that is somehow connected to the main agreement
that contains the arbitration clause." *Id*. (citation and
internal quotation marks omitted).  If, on the other hand, an
arbitration clause is broad, "there arises a presumption of
arbitrability and arbitration of even a collateral matter will
be ordered if the claim alleged implicates issues of contract
construction or the parties' rights and obligations under it."
*Id*. (citation and internal quotation marks omitted).

The arbitration provision is clearly broad as it applies to "any controversy or claim arising out of, or relating to your employment relationship with K&M Systems. . . ." (ECF No. 25-2, Exhibit A.)  Courts in the Second Circuit have consistently held that arbitration provisions applicable to "any" claims, controversies, or disputes "in relation" or "relating" to an agreement should be considered "broad." *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 405-06 (S.D.N.Y. 2003) (finding the arbitration clause, "[any claim] arising out of or relating to . . . [the] Account," to be broad); *JLM Indus., Inc.*, 387 F.3d at 172 (finding an arbitration clause encompassing "[a]ny and all differences and disputes of whatsoever nature arising out of th[e] Charter" broad in scope); *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech.*, Inc., 369 F.3d 645, 649, 654 (2d Cir. 2004) (finding the clause "any controversy, claim or dispute between the Parties arising out of or relating in any way to this Agreement" to be broad); *Collins & Aikman Prods. Co. v. Bldg. Sys.*, *Inc.*, 58 F.3d 16, 20 (2d Cir. 2005) (finding an arbitration clause encompassing "[a]ny claim or controversy arising out of or relating to th[e] agreement" broad).  Thus, the court finds that the provision evinced a broad arbitration agreement and the claims are clearly within the scope.

## CONCLUSION

For the foregoing reasons, defendant's motion to compel arbitration and stay this action is GRANTED.  The Clerk of Court is respectfully requested to mark this case as STAYED pending arbitration of plaintiff's claim and administratively close the case.  The parties are directed to jointly update the court immediately after completing arbitration or otherwise resolving this matter.

**SO ORDERED.**

Dated:      December 8, 2020
            Brooklyn, New York

                                    _____/s/_____
                                    HON. KIYO A. MATSUMOTO
                                    United States District Judge
                                    Eastern District of New York